AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | | |
|---|---|---|
| United States of America<br>v.<br>Marcelo ALONSO-ALMARAZ<br><br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No.  MJ 22-1710 JHR |

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  from 10/30/2022 through 11/3/2022  in the county of  Bernalillo  in the
_____  District of  New Mexico  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324 | Bringing in and harboring certain aliens |
| 18 U.S.C. 1203 | Hostage Taking |
| 18 U.S.C 922 (g)(5)(A) | Unlawful Act:  Alien in possession of a firearm |

This criminal complaint is based on these facts:
See the affidavit of Special Agent Sean Murphy, which is attached and incorporated by reference.

☑ Continued on the attached sheet.

*Complainant's signature*

Sean Murphy Special Agent
*Printed name and title*

Telephonically sworn and electronically signed

Date: 11/04/2022

*Judge's signature*

City and state:  Albuquerque, NM

Hon. Jerry Ritter, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

United States of America

v.

Marcelo ALONSO-ALMARAZ

and

Eloisa ALMARAZ-VASQUEZ Defendant.

### AFFIDAVIT

I, Sean Murphy, being duly sworn, hereby depose and state the following:

### INTRODUCTION AND AGENT BACKROUND

1. Your Affiant is a Special Agent with the Department of Homeland Security, Homeland Security Investigations, hereafter referred to as HSI, and has been employed by HSI since November of 2018. Your Affiant is currently assigned to the HSI office in Albuquerque, NM where your Affiant is assigned to investigate individuals involved in the trafficking of people including violations of Title 18, United States Code, Section 1591 and 1592. Your Affiant has worked human trafficking investigations and human smuggling investigations and has been trained in the investigation of human trafficking and human smuggling cases by the Department of Homeland Security and other governmental and non-governmental entities. During the investigation of these cases, your Affiant has participated in the execution of search warrants pertaining to these violations.

2. Your Affiant has completed the Criminal Investigator Training Programs at the Federal Law Enforcement Training Center. This program addressed general investigatory topics over the span of twelve weeks. Your Affiant also completed 15 weeks of the Homeland Security Investigations Special Agent Training Program. Prior to employment with Homeland Security Investigations, your Affiant worked for the Elkton Police Department in Elkton, Maryland for over ten years. During that time, your Affiant conducted investigations into a wide array of offenses including but not limited to drug offenses, prostitution, human trafficking, rape, robbery, child abuse, child sexual abuse, aggravated assault, and homicide. During these investigations, your Affiant authored and served numerous search and seizure warrants, as well as arrest warrants, for the aforementioned crimes. Your Affiant possesses a baccalaureate degree in Psychology from Lee

1

University in Cleveland, Tennessee and a graduate degree in Homeland Security Management from Towson University in Towson, Maryland.

3. The information contained in this affidavit is not an exhaustive account of everything I have learned about this case. Rather, this affidavit contains only the facts I believe are necessary to establish probable cause in support of a criminal complaint against Marcelo ALONSO-ALMARAZ and Eloisa ALMARAZ-VASQUEZ. for violation of Title 18, United States Code, Sections 1324, Title 18 United States Code, Section 1203, and Title 18 United States Code, Section 922 (g)(5)(A).

4. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

## RELEVANT STATUTES

5. This investigation concerns alleged violations of Title 18, United States Code, Sections 1324 (a)(1)(A)(iii), bringing in and harboring certain aliens, Title 18 United States Code, Section 1203, Hostage Taking, and Title 18 United States Code, Section 922 (g)(5)(A), Unlawful Acts: alien in possession of a firearm

6. 18 U.S.C. § 1203 states "whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment."

7. 18 U.S.C. 1324 (a)(1)(A)(iii) prohibits knowingly or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation

8. 18 U.S.C. 922 (g)(5)(A) prohibits the possession of a firearm by an alien who is illegally or unlawfully in the United States.

## DETAILS OF INVESTIGATION

9. On November 2nd, 2022 at approximately 2312 hours Special Agent Sean Murphy of Homeland Security Investigations in Albuquerque received a phone call from the Phoenix Police Department in Phoenix, AZ. Sgt. Darren Arnson advised that a female subject identified as Witness 1 (W1) reported to the Phoenix Police Department that her

2

sister, identified as Victim 1 (V1) was being held by a human smuggler in Albuquerque, NM. W1 further advised that her sister's two minor daughters, identified as Minor Victim 1 (MV1) and Minor Victim 2 (MV2), were also being held by the smuggler. MV1 is a 9-year-old female. MV2 is a 5-year-old female. W1 advised that the Suspect stated that she could bring $6000 to Albuquerque, NM in order to secure the release of her family members. She further advised that she had already paid more than $30,000 in order to have her sister and nieces smuggled into the United States.

10. On November 3, 2022, Special Agents from Homeland Security Investigations along with Detectives from the Albuquerque Police Department VICE Unit continued investigating this matter. Direct phone contact was made with W1 who confirmed the information relayed by the Phoenix Police Department. She provided a video depicting V1, MV1, and MV2. Additionally, she advised the video was sent to her from the suspect as proof that the suspect had her family members. She further provided a recording of a phone call which confirmed her report. On the recording a female subject spoke with W1. After some conversation, the female subject passed the phone to an unknown male. W1 advised that the female subject with whom she spoke on the recording was her sister. Spanish speaking law enforcement officers were able to deduce that the information on the recording corroborated the statement from W1 about V1, MV1, and MV2 not being released from the suspect's custody until they receive payment. W1 further advised that V1's phone was taken from her and turned off.

11. W1 advised that she had previously paid for V1 and the 2 minor victims to be smuggled into the United States. She stated that she learned of the additional payment demand from the suspect when the suspect called her on November 2, 2022. She advised that the suspect phone number is 505-435-8225. The phone carrier was identified as AT&T. An exigent request for location date was made to AT&T. The location data received from AT&T consistently correlated to an area of the 300 Block of Valencia St SE. Detectives with the Albuquerque Police Department canvassed the area which has hundreds of individual residences. Detectives exhausted all abilities to locate the specific location of the alleged suspect's phone at that time. Subscriber data on the aforementioned number came back to a subject named Eloisa VASQUEZ.

12. Investigative mean revealed another number with the same subscriber, Eloisa VASQUEZ. That number, 505-520-8090, was linked to a money transfer to Mexico in October 2022 by Eloisa VASQUEZ. At that time, VASQUEZ utilized an address of 541 Palomas Drive in Albuquerque, NM. An exigent request for location data on that phone was made to the service provider, AT&T. Location data received consistently correlated to the area of 541 Palomas Drive with radius between approximately 8 and 30 meters. As a result, surveillance was established on that residence.

13. An Undercover Agent (UCA), through coordination with W1, was able to establish contact with a male subject on the suspect phone with the number 505-435-8225. Several phone calls were exchanged. One of the calls was answered by a female subject who

3

advised that the male had fallen asleep. Ultimately, the male subject re-established contact with the UCA via telephone and arranged to meet. The agreement was for the UCA to pay $6,000 in cash to the suspect in exchange for V1, MV1, and MV2. Shortly after the arrangements were made, surveillance units indicated that the observed an adult female and two female children exit an apartment of 541 Palomas Drive Apartment A and enter a Dodge van. Surveillance units then saw multiple other individuals exit the same residence and get into another a Honda SUV. Shortly thereafter, two vehicles departed the parking area of the residence. One vehicle, described as a Honda SUV ultimately took an easternly route. The other vehicle, the Dodge van, took a westerly route in the direction of the meet location. Surveillance was maintained on the Dodge van continuously from the residence to the meet location.

14. On November 3, 2022 at approximately 2315 hours upon the suspect's arrival to the meet location, the UCA made contact with the driver of the van. The UCA paid $6,000 in cash, and the driver of the van, ultimately identified as Marcelo ALONSO-ALMARAZ aka Roberto MARTINEZ-GABRIEL, allowed the UCA to take possession of V1, MV1, and MV2 who were in the van. Upon taking possession of the victims, agents moved in and took the remaining occupants into custody. The front seat passenger of the van was identified as Eloisa ALMARAZ-VASQUEZ. Additionally, there were two remaining occupants in the rear of the vehicle. Ultimately, they were discovered to be in the United States illegally and were intending to be transported to a different destination following the release of V1, MV1, and MV2.

15. The victims were immediately removed from the scene and taken to Homeland Security Investigations in Albuquerque, NM. At that location, an interview was conducted with V1. Among other things, during the interview the following information was gathered. V1 advised that she arrived in Albuquerque on Sunday October 30, 2022, and has not stayed anywhere other than 241 Palomas Drive. V1 advised that upon her arrival her cell phone was taken from her. She further stated that her money was taken. V1 indicated that they accused her of withholding money and was searched as a result. V1 advised that the male subject driving the van, identified as Marcelo ALONSO-ALMARAZ, was the main controller of the people in the residence. V1 affirmed that she and her daughters were not the only people in the residence who were in the process of being smuggled. V1 advised that there routinely large groups of aliens in the apartment. V1 advised that ALONSO-ALMARAZ usually kept a black and silver handgun on his person. V1 stated that ALONSO-ALMARAZ would brandish the weapon, pointing it at aliens in the residence and tell them that he was the boss, threatening to kill them if they did not do what he said. V1 advised that there were two rooms in the home where aliens were kept. She advised that they were usually separated by male and female. V1 stated that she observed ALONSO-ALMARAZ strike some of the people with a handgun for not responding to him quickly enough. She stated that the aliens were fed 2 meals per day and that it was never enough food. V1 stated that at times there were so many people in the rooms that they could not lay down; they had to sit on the floor with their legs curled in. V1 advised that she could hear MV1 and MV2's stomach rumbling from the lack of

food. V1 advised that she would wash dishes in the home, pass out blankets, or serve food to the other aliens. She stated that for doing this work, she would be allowed to take a little extra food for MV1 and MV2. V1 advised that while she was speaking to W1 on the phone, relaying the terms for her release, ALONSO-ALMARAZ was pointing a gun at her to deter her from saying something he did not want her to say. V1 advised that the female subject who was in the passenger seat of the van was named "Eloisa." She further advised that "Eloisa" was the wife of ALONSO-ALMARAZ. As previously stated, this female subject was identified as Eloisa ALMARAZ-VASQUEZ. V1 stated that the proof of life video was made by ALMARAZ-VASQUEZ and that she was helping to coordinate the collection of extortion funds. V1 advised that her daughters cried often because of the volatile situation occurring in the residence.

16. V1 advised that when she left the evening of her rescue, there were numerous other illegal aliens in the residence, to include a baby. She stated that during her time there, the aliens were never left without someone watching them. She further stated that other aliens at the location were also being extorted for money in the same manner as she was.

17. A search incident to arrest of the Dodge van yielded a Smith and Wesson pistol on the driver side floorboard of the vehicle. While rendering the firearm into a safe condition, Agents observed that the magazine to the firearm was loaded with ammunition, but a round had not been placed into the chamber. Based on the training, knowledge, and experience of Agents on the scene the firearm appeared to be functional. An additional loaded magazine for a Smith and Wesson firearm was located in a purse on the passenger side floor. A .380 caliber round was located on ALONSO-ALMARAZ's person. I know, in my training and experience, that there are no firearms manufactured in the State of New Mexico, and I believe this firearm and ammunition to have been manufactured outside the state. The $6,000 paid by the UCA to ALONSO-ALMARAZ was also recovered. Approximately $1300 in cash, apart from the UCA payment, was also recovered.

18. ALONSO-ALMARAZ and ALMARAZ-VASQUEZ were transported back to Homeland Security Investigations for processing. A check of ALONSO-ALMARAZ's fingerprints indicated that he had previously been deported and that he is a Mexican national. Database checks indicated that ALMARAZ-VASQUEZ had no legal status in the United States.

19. On November 4, 2022, agents from Homeland Security Investigations responded back to 541 Palomas Drive Apartment A out of concern for the health and wellbeing of remaining aliens which V1 spoke about. Given the statements made by V1 concerning the lack of food, presence of small children, and hostility of the hostage takers, as well as the information and observations made about 541 Palomas, Agents made entry into the premise to locate and remove potential hostages who agents believed were in danger. Upon entry, approximately 50 illegal aliens were located, to include one infant. Initial observations by agents corroborated the concern for their safety. At the time of this

5

writing, a search and seizure warrant relating to this matter is being sought.

20. This criminal complaint was completed and reviewed by AUSA Letitia Simms.

## CONCLUSION

1. Based on the facts set forth in this affidavit, there is probable cause to believe that between October 30, 2022 and November 3, 2022, in the County of Bernalillo, State and District of New Mexico, Marcelo ALONSO-ALMARAZ and Eloisa ALMARAZ-VASQUEZ, did violate Title 18, United States Code, Sections 1324 (a)(1)(A)(iii), bringing in and harboring certain aliens, Title 18 United States Code, Section 1203, Hostage Taking, and Title 18 United States Code, Section 922 (g)(5)(A), Unlawful Acts: alien in possession of a firearm.

_____
Sean Murphy, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
This  4th  day of  November , 2022     electronically and sworn by telephone - JHR

_____
HONORABLE Jerry H. Ritter
United States Magistrate Judge